## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

MELVIN PRYEAR,

      Petitioner,

v.                                     Case No. 3:19cv357-MCR-MJF

MARK S. INCH,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner Melvin Pryear has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1). Respondent ("the State") answered, providing relevant portions of the state court record. (Doc. 19). Pryear did not reply. The undersigned concludes that no evidentiary hearing is required for the disposition of this matter and that Pryear is not entitled to habeas relief.[1]

## I.    Background and Procedural History

The facts are drawn from the evidence presented at trial as summarized by the Florida First District Court of Appeal. *See Pryear v. State*, 243 So.3d 479, 481-82 (Fla. 1st DCA 2018); *see also* Doc. 19, Attachs. 2-3, Ex. B (trial transcript).

---

[1] The court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b).

On November 21, 2013, a semi-truck struck Pryear's vehicle, resulting in the death of Pryear's passenger, Albertina McCarty. Pryear was traveling northbound on the highway when he made a left turn in front of the semi-truck, which was traveling southbound. Both vehicles had a green signal without any turn arrows illuminated.

Two sisters witnessed the accident. One sister, Janice Spencer, testified that when she saw Pryear's car start to turn, she said to herself, "Don't go, don't go," because the semi-truck was too close for Pryear to safely make the turn. The other sister, Sharon Watson, testified that the semi-truck was moving fast, estimating that the truck appeared to be "doing every bit of [the 40 or 45 miles per hour speed limit] coming through the intersection."

Other eyewitnesses testified that Pryear smelled of alcohol and had beer cans in his car. The traffic homicide investigator testified that, hours after the accident, Pryear's eyes still were bloodshot and watery and his speech was slurred. After full investigation, including reconstruction of the accident, the investigator concluded that Pryear was at fault in the accident, because he violated the semi-truck's right-of-way by making a left turn in front of the truck when he should have yielded to oncoming traffic. A Florida Highway Patrol trooper testified that a blood draw was conducted at the hospital, and a Florida Department of Law Enforcement laboratory analyst testified that she tested the sample. Her report was introduced into evidence,

reflecting that Pryear's blood alcohol level was .196 grams of alcohol per 100 milliliters of blood, or more than twice the legal limit in Florida.

In Escambia County Circuit Court Case No. 2013-CF-5789, Pryear was charged with Driving Under the Influence ("DUI") Manslaughter (Count 1), and DUI Causing Damage to Property or Person without Serious Injury (Count 2). (Doc. 19, Attach. 1, Ex. A at 2-3).[2] A jury found Pryear guilty of both counts as charged. (*Id*. at 119). The trial court adjudicated Pryear guilty and sentenced him to 15 years of imprisonment for the DUI manslaughter (with a 4-year mandatory minimum term of imprisonment) and a concurrent term of 11 months and 29 days of imprisonment for the DUI causing property damage. (Attach. 2, Ex. A at 172-180). The Florida First District Court of Appeal ("First DCA") affirmed on January 22, 2016, *per curiam* and without written opinion. *Pryear v. State*, 185 So. 3d 1238 (Fla. 1st DCA 2016) (Table) (copy at Attach. 4, Ex. G). Pryear's motion for rehearing was denied on March 1, 2016. (Attach. 4, Ex. I).

On March 23, 2017, Pryear filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. (Attach, 4, Ex. K at 11-44). The state circuit court summarily denied relief. (*Id*. at 45-162). The First DCA affirmed

---

[2] Citations to the state court record are to the electronically filed exhibits attached to the State's answer. (Doc. 19). The citation refers to the electronic attachment number followed by the lettered exhibit. If a page of an exhibit bears more than one page number, the court cites the number appearing at the bottom center of the page.

in a written opinion. *Pryear v. State*, 243 So. 3d 479 (Fla. 1st DCA 2018) (copy at

Attach. 4, Ex. M). The Florida Supreme Court denied review on December 17, 2018.

(Attach. 5, Ex. U).

Pryear filed his *pro se* federal habeas petition on February 6, 2019, raising

eight grounds for relief (seven grounds of ineffective assistance of trial counsel, and

one ground of trial court error). (Doc. 1). The State asserts that Pryear is not entitled

to relief because his claim of trial court error is procedurally defaulted, and his

remaining claims fail to meet § 2254(d)'s rigorous standard for habeas relief. (Doc.

19).

## II.    Relevant Legal Principles

### Section 2254 Standard of Review

A federal court "shall not" grant a habeas corpus petition on any claim that

was adjudicated on the merits in state court unless the state court's decision "was

contrary to, or involved an unreasonable application of, clearly established Federal

law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). The United

States Supreme Court explained the framework for § 2254 review in *Williams v.

Taylor*, 529 U.S. 362 (2000).[3] Justice O'Connor described the appropriate test:

---

[3] Unless otherwise noted, references to *Williams* are to the majority holding, written
by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter,
Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-
99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy,
Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403-13).

>      Under the "contrary to" clause, a federal habeas court may grant
> the writ if the state court arrives at a conclusion opposite to that reached
> by this court on a question of law or if the state court decides a case
> differently than this Court has on a set of materially indistinguishable
> facts. Under the "unreasonable application" clause, a federal habeas
> court may grant the writ if the state court identifies the correct
> governing legal principle from this Court's decisions but unreasonably
> applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Under the *Williams* framework, the federal court must first determine the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). After identifying the governing legal principle, the federal court determines whether the state court's adjudication is contrary to the clearly established Supreme Court case law. The adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *See Early v. Packer*, 537 U.S. 3, 8 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").

If the "contrary to" clause is not satisfied, the federal court determines whether the state court "unreasonably applied" the governing legal principle set forth in the

---

The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle was "objectively unreasonable" in light of the record before the state court. *See Williams*, 529 U.S. at 409; *Holland v. Jackson*, 542 U.S. 649, 652 (2004). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Section 2254(d) also allows habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011). As with the "unreasonable application" clause, the federal court applies an objective test. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529

U.S. at 410). AEDPA also requires federal courts to "presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" *Landrigan*, 550 U.S. at 473-74 (quoting 28 U.S.C. § 2254(e)(1)).

The Supreme Court has often emphasized that a state prisoner's burden under § 2254(d) is "difficult to meet . . . because it was meant to be." *Richter*, 562 U.S. at 102. The Court elaborated:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin*, 518 U.S. 651, 664, 116 S. Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, <u>a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement</u>.

*Richter*, 562 U.S. at 102-03 (emphasis added).

A federal court may conduct an independent review of the merits of a petitioner's claim only if it first finds that the petitioner satisfied § 2254(d). *See Panetti v. Quarterman*, 551 U.S. 930, 954 (2007). Even then, the writ will not issue

unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

**Clearly Established Federal Law Governing Claims of Ineffective Assistance**

The Supreme Court follows a two-pronged test for evaluating claims of ineffective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668 (1984). The petitioner must show (1) his counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced him. *See id.* at 687. "First, petitioner must show that 'counsel's representation fell below an objective standard of reasonableness.' Second, petitioner must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Darden v. Wainwright*, 477 U.S. 168, 184 (1986) (quoting *Strickland*, 466 U.S. at 694).

"Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. Trial counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. The burden to overcome that presumption and show that counsel's performance was deficient "rests squarely on the defendant." *Burt v. Titlow*, 571 U.S. 12, 22-23

(2013); *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) ("To overcome that presumption, a defendant must show that counsel failed to act reasonably considering all the circumstances." (quotation marks and alterations omitted)).

*Strickland*'s prejudice prong requires a defendant to establish a "reasonable probability" of a different trial outcome. *See Strickland*, 466 U.S. at 694. A reasonable probability is one that sufficiently undermines confidence in the outcome. *Id.* "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *See Strickland*, 466 U.S. at 698. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 562 U.S. at 105 (citations omitted). The Supreme Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question

is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Id.* (citations omitted).

## III.  Discussion

<u>Ground One</u>  **<u>"Trial Counsel Was Ineffective For Failing To Renew Objection To The State's Peremptory Challenge Of A Prospective Black Juror And For Improperly Waiving His Right To Appellate Inquiry." (Doc. 1 at 6).</u>**

Pryear claims that trial counsel was ineffective when he initially raised, but failed to renew, a *Batson* objection to the State striking from the jury a black woman (Ms. Briggs).[4] Pryear alleges that the State's proffered reason for the strike applied equally to a white male juror (Mr. Hamblin). (Doc. 1 at 6). Pryear asserts that counsel's failure to renew the objection waived the *Batson* claim under Florida law, thereby preluding appellate review. (Doc. 1 at 6 (citing *Joiner v. State*, 618 So. 2d 174, 176 (Fla. 1993)). In *Joiner*, the Florida Supreme Court held that a defendant waived his *Neil*/*Batson* claim when he accepted the jury at the conclusion of voir dire without either (1) expressly renewing his objection before the jury was sworn, or (2) accepting the jury subject to his earlier *Batson* objection. *Id*. at 176; *see also State v. Neil*, 457 So. 2d 481, 486-87 (Fla. 1984) (discussing procedures for challenging discriminatory use of peremptory strikes).

---

[4] *Batson v. Kentucky*, 476 U.S. 79 (1986) (holding that racial discrimination by the State in the selection of juries violates the Equal Protection Clause).

The parties agree that Pryear presented this ineffective assistance claim to the state courts in his Rule 3.850 proceeding; that the state circuit court denied relief; that Pryear briefed the issue in his postconviction appeal; and that the First DCA affirmed on the merits in a written opinion. (Doc. 1 at 6-7; Doc. 19 at 16). The State argues that Pryear is not entitled to habeas relief because he fails to meet § 2254(d)'s demanding standard. (Doc. 19 at 16-23).

### A. State Court's Decision

Pryear presented this claim to the state courts as Ground One of his Rule 3.850 motion. The state circuit court summarily denied relief. (Attach. 4, Ex. K at 48-54). The First DCA affirmed, explaining:

> In Appellant's first claim, he argued that his attorney was ineffective for failing to renew his objection to the State's use of a peremptory challenge to strike an African-American juror. Appellant alleged that the State's race-neutral reason for the strike applied equally to a white juror; therefore, it was pretextual as a matter of law.

> A claim of ineffective assistance of counsel is governed by *Strickland v. Washington*, 466 U.S. 668, 690 (1984). To prove ineffective assistance, a defendant must allege 1) the specific acts or omissions of counsel which fell below a standard of reasonableness under prevailing professional norms, *see id.* at 690; and 2) that the defendant's case was prejudiced by these acts or omissions such that the outcome of the case would have been different, *see id.* at 692. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. The defendant must demonstrate a likelihood of a different result which is substantial and not just conceivable. *Harrington v. Richter*, 562 U.S. 86, 112 (2011). "The prejudice in counsel's deficient performance is assessed based upon its effect on the results at trial, not on its effect on appeal." *Strobridge v.*

*State*, 1 So. 3d 1240, 1241 (Fla. 4th DCA 2009) (citing *Carratelli v.
State*, 961 So. 2d 312, 323 (Fla. 2007)).

     A claim of ineffective assistance of counsel arguing counsel's
failure to raise a *Neil* objection is not normally a basis for
postconviction relief. *Jones v. State*, 10 So. 3d 140, 141-42 (Fla. 4th
DCA 2009). This is true, because the prejudice prong cannot be proven
absent some indication that the jury that actually served was biased. *See
Yanes v. State*, 960 So. 2d 834, 835 (Fla. 3d DCA 2007); *Jenkins v.
State*, 824 So. 2d 977, 984 (Fla. 4th DCA 2002).

     Here, even if Appellant could establish that counsel performed
deficiently for failing to renew his objection to the strike, he failed to
establish that this omission affected the outcome of his trial, and not
just the possible outcome of his appeal. Furthermore, the transcripts
from voir dire reveal no indication that the juror who actually served
was biased, as he joined with the rest of the prospective jurors in
indicating that he could be impartial and properly apply the burden of
proof and presumption of innocence. Under these circumstances, this
claim was properly denied.

*Pryear*, 243 So. 3d at 482-83 (footnote omitted) (copy at Attach. 4, Ex. M at 2-3).

## B.    Section 2254 Review of State Court's Decision

     The state court's decision was not contrary to clearly established federal law,

because the state court utilized the *Strickland* standard, and the facts of Pryear's

claim are not materially indistinguishable from any Supreme Court case where the

Court has deemed *Strickland*'s prejudice prong satisfied. To warrant habeas relief,

therefore, Pryear must show that the state court's application of the *Strickland*

standard was unreasonable.

     The First DCA rejected Pryear's claim because he failed to show that

counsel's error prejudiced the trial. Fairminded jurists can and do disagree whether

*Strickland*'s prejudice inquiry in this situation should focus on the effect of counsel's error on the defendant's *trial* or his *appeal*. The Supreme Court's cases give no clear answer.

In *Strickland*, the Court stated that "the ultimate focus of [the ineffective assistance] inquiry must be on the fundamental fairness of the proceeding whose result is being challenged." 466 U.S. at 696. The Court explained:

> The governing legal standard plays a critical role in defining the question to be asked in assessing the prejudice from counsel's errors. When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt. When a defendant challenges a death sentence such as the one at issue in this case, the question is whether there is a reasonable probability that, absent the errors, the sentencer—including an appellate court, to the extent it independently reweighs the evidence—would have concluded that the balance of aggravating and mitigating circumstances did not warrant death.

*Strickland*, 466 U.S. at 695. Later, in *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), the Supreme Court examined a case involving trial counsel's failure to file a notice of appeal on behalf of a defendant. The Supreme Court held: "[W]hen counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim entitling him to an appeal." *Id.* at 484. The Court noted that counsel's performance deprived the defendant of an appellate proceeding altogether.

There is no Supreme Court case deciding whether *Strickland*'s prejudice analysis should focus on the trial—or on the appeal—when a defendant claims that trial counsel performed deficiently during trial when he raised, but failed to preserve for appellate review, an alleged error that occurred during trial. The Eleventh Circuit, as well as other federal courts, have recognized the lack of clearly established federal law on this question. *See Carratelli v. Stepp*, 382 F. App'x 829, 832 (11th Cir. 2010) (unpublished) ("[T]here is no clearly established federal law by the Supreme Court specifically addressing whether the federal court should examine the prejudice on appeal rather than at trial in a case like this one [where the issue was raised at trial but not properly preserved for appeal].").

The First DCA's decision in this case—to gauge prejudice against the outcome of the trial (the stage at which counsel's alleged error occurred) and not the appeal does not contravene any Supreme Court precedent. Accordingly, this court cannot say that the state court's decision involved an unreasonable application of clearly established federal law. *See Wright v. Van Patten*, 552 U.S. 120, 126 (2008) ("Because our cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established federal law.") (internal quotation marks omitted); *Landrigan*, 550 U.S. at 478 (holding that the Arizona Supreme Court did not unreasonably apply federal law because "we have never addressed a situation like this."); *Carey v.*

*Musladin*, 549 U.S. 70, 77 (2006) ("Given the lack of holdings from this Court . . ." the denial of relief by the state court "was not contrary to or an unreasonable application of clearly established federal law.").

The undersigned recognizes that in *Davis v. Sec'y for Dep't of Corr.*, 341 F.3d 1310 (11th Cir. 2003), the Eleventh Circuit held that "when a defendant raises the unusual claim that trial counsel, while efficacious in raising an issue, nonetheless failed to preserve it for appeal, the appropriate prejudice inquiry asks whether there is a reasonable likelihood of a more favorable outcome on appeal had the claim been preserved." *Id.* at 1316. The decision in *Davis*, however, does not control this case. "*Davis* is not clearly-established federal law under the AEDPA." *Carratelli*, 382 F. App'x at 832. Moreover, the *Davis* decision involved *de novo* review of an ineffective assistance claim, not deferential review under § 2254(d)(1). *Davis*, 341 F.3d at 1313; *see also Carratelli*, 382 F. App'x at 831, 832 (emphasizing that point). And finally, *Davis* is distinguishable on its facts. In *Davis*, the petitioner raised his *Batson* claim on direct appeal, but the state court declined to review it because counsel failed to preserve it. *Davis*, 341 F.3d at 1311-12; *see also Davis v. State*, 710 So. 2d 723, 724 (Fla. 3d DCA 1998) (declining to address the *Batson* claim because the claim "was not properly preserved"). Here, Pryear did not attempt to raise, or even mention the *Batson* claim in his direct appeal. (Doc. 19, Attach. 4, Ex. E (appellate counsel's *Anders* brief); Ex. F (Pryear's *pro se* initial brief)).

It also bears noting that other courts have disagreed with the Eleventh Circuit's decision in *Davis*. *See, e.g., Kennedy v. Kemna*, 666 F.3d 472, 486 (8th Cir. 2012) (distinguishing *Davis* because it involved *de novo* review; recognizing that other courts "have wholly rejected the Eleventh Circuit's relatively broad interpretation of *Flores-Ortega*;" and holding that "fairminded jurists could disagree" over whether the prejudice resulting from the failure to preserve a trial error should be evaluated by the effect on the defendant's trial or his appeal); *Taylor v. United States*, 279 F. App'x, 368, 369 (6th Cir. 2008) (same); *King v. State*, 211 So. 3d 866, 887-88 (Fla. 2017) (explicitly rejecting *Davis* in addressing claim that trial counsel was ineffective for failing to renew a *Batson* challenge as required by *Joiner, supra*).

Having determined that the First DCA did not unreasonably apply clearly established federal law when it focused *Strickland*'s prejudice inquiry on the outcome of Pryear's trial instead of his appeal, this court's review turns to the reasonableness of the state court's ultimate rejection of Pryear's claim. The First DCA determined that Pryear failed to carry his burden of demonstrating that the removal of Briggs, even if in error, prejudiced the defense at trial. This conclusion is reasonable.

During jury selection, the State used a peremptory strike to remove Briggs. (Attach. 3, Ex. B at 84). Trial counsel requested race and gender neutral reasons for

the strike. (*Id.*). The State proffered that she was young, she was a student, and she indicated she had a transportation problem on the second day of trial. (*Id.* at 84-85). Defense counsel argued that Hamblin also indicated a hardship. (*Id.*). The trial judge ruled, "I don't find [the State's justification] to be genuine." (*Id.* at 85). The State then proffered the additional reason that Briggs's father had been arrested for a DUI in the past. (*Id.* at 86). The trial court determined that in the aggregate, the proffered justification was genuine. (*Id.*). Defense counsel argued that the additional justification was not genuine. The court ruled: "I find the preempt challenge to be genuine and it will be granted." (*Id.* at 87). Jury selection continued, and the jury was accepted by both parties, including Pryear personally. (*Id.* at 90-93). On direct appeal, Pryear did not raise a *Batson* claim, did not mention anything about jury selection (except that it occurred), and did not even hint that a *Batson* issue existed but was not being briefed because it was not properly preserved. (Doc. 19, Attach. 4, Exs. E, F).

This court cannot say that the First DCA's rejection of Pryear's claim involved an unreasonable application of the *Strickland* standard. There is no evidence that race played any role in this case, that any juror was biased, or that it is reasonably probable a black juror would have seen the evidence differently than the white jurors

who found Pryear guilty.[5] *See, e.g., Wilson v. Sec'y, Fla. Dep't of Corr.*, 786 F. App'x 878, 881 (11th Cir. 2019) ("Even liberally construing his brief, Wilson's only argument is that a more racially balanced jury would have been less likely to convict him. This conclusory argument falls short of showing a substantial likelihood of a different result."); *Sneed v. Fla. Dep't of Corr.*, 496 F. App'x 20, 27 (11th Cir. 2012) (per curiam) ("Indeed, Sneed has not shown that, had counsel objected, his challenge would have been successful, nor is it clear that the second prospective black juror being on the jury would have carried a reasonable probability of changing the outcome of the trial.").

For all of the foregoing reasons taken together, Pryear is not entitled to habeas relief on Ground One.

**Ground Two**       **"Trial Counsel Was Ineffective For Failing To Move To Strike Opinion Testimony Which Was Unresponsive And Prejudicial." (Doc. 1 at 7).**

Pryear claims that trial counsel was ineffective for "fail[ing] to move to strike the unresponsive testimony of Florida State Trooper Gregory Nelson who improperly expressed his opinion of the Petitioner's guilt and indicated that law enforcement possessed information not presented to the jury that pointed to Petitioner's guilt during cross-examination." (Doc. 1 at 7-8). Pryear argues that

---

[5] Pryear is black, as was the victim, Ms. McCarty. (Doc. 19, Attach. 3, Ex. B at 246 (medical examiner's description of McCarty)).

counsel's lack of objection prejudiced him because "the improper statements invaded the province of the jury as finders of fact, bolstered Trooper Nelson's and the testimony of State expert witnesses Traffic Homicide Investigator Stephen Fisher and Forensic Toxicologist Lisa Montgomery, both who concluded Petitioner was impaired when the accident occurred and counsel's theory of defense was that Petitioner was not [impaired]." (*Id*. at 8).

The parties agree that Pryear presented this claim to the state courts in his Rule 3.850 proceeding; that the state circuit court summarily denied relief; that Pryear briefed the issue in his postconviction appeal; and that the First DCA affirmed on the merits in a written opinion. (Doc. 1 at 8-9; Doc. 19 at 24). The State argues that Pryear is not entitled to habeas relief because he fails to meet § 2254(d)'s demanding standard. (Doc. 19 at 25-30).

### A.     State Court's Decision

Pryear presented this claim to the state courts as Ground Two of his Rule 3.850 motion. The state circuit court summarily denied relief. (Attach. 4, Ex. K at 54-56). The First DCA affirmed for these reasons:

> In Appellant's second claim, he argued that his attorney should have moved to strike the highway patrol trooper's improper opinion testimony that Appellant was at fault in the accident and that the trooper had "other circumstances" that led him to believe that Appellant was intoxicated. Appellant alleged that this testimony invaded the province of the jury and bolstered the testimony of the State's witnesses who testified that Appellant was impaired at the time of the accident.

Page 19 of 44

Appellant asserted that it also suggested that law enforcement had other evidence which was not presented to the jury.

The challenged testimony occurred in the context of cross-examination. Defense counsel asked whether Appellant's bloodshot eyes and the scent of alcohol on his breath provided the basis for the belief that Appellant was intoxicated at the time of the accident. The trooper replied, "He was also at fault for causing a fatality." Defense counsel then asked, "So you're saying [Appellant] was at fault, but the investigation wasn't completed was it?" The trooper responded, "No, but we had the circumstances." The trooper also agreed that he did not witness the accident, and had not yet spoken to witnesses when he came to this conclusion.

As an initial matter, the trooper did not state that he had "other circumstances" to back up his beliefs, but rather, he had "the circumstances," referring to the circumstances of the accident. Thus, it is clear that the trooper did not suggest that law enforcement had evidence suggesting Appellant's culpability that was not presented to the jury.

With regard to the testimony about Appellant's intoxication and whether he was at fault in the accident, even assuming there was a basis for an objection, Appellant failed to show prejudice: Witnesses at the scene of the accident observed beer cans in Appellant's car and smelled alcohol on his person; the traffic homicide investigator testified that Appellant's eyes were bloodshot and watery and his speech was slurred; and a blood draw was conducted, and Appellant's blood alcohol level was determined to be .196. Thus, there is no reasonable probability that the outcome of the trial would have been different if the trooper's testimony regarding Appellant's intoxication had been stricken.

Furthermore, an eye witness indicated that when Appellant's car started to move through the intersection, she was afraid, because the semi-truck was too close for Appellant to safely make the turn. The traffic homicide investigator testified that Appellant was at fault in the accident, because he violated the truck's right-of-way.FN2 Given this evidence, combined with the evidence of intoxication, there is no reasonable probability that the outcome of the trial would have been

different, even if the trooper's testimony that Appellant was at fault in the accident had been stricken.

> FN2  Appellant raised no argument as to the propriety of this testimony.

*Pryear*, 243 So. 3d at 483-84 (copy at Attach. 4, Ex. M at 3-5).

## B.    Section 2254 Review of State Court's Decision

The state court's decision was not contrary to clearly established federal law, because the court utilized the *Strickland* standard, and the facts of Pryear's claim are not materially indistinguishable from any Supreme Court case where the Court has found a *Strickland* violation. To warrant habeas relief, Pryear must show that the state court's application of the *Strickland* standard was unreasonable.

In reviewing the First DCA's decision, this court defers to the state court's findings of historical facts, because they are amply supported by the record and because Pryear has not rebutted them with clear and convincing evidence to the contrary. *See Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011) (holding that the AEDPA "affords a presumption of correctness to a factual determination made by a state court; the habeas petitioner has the burden of overcoming the presumption of correctness by clear and convincing evidence.") (citing 28 U.S.C. § 2254(e)).

The First DCA determined that Trooper Nelson did *not* suggest that law enforcement had incriminating evidence that was not presented to the jury; therefore,

Pryear's proposed objection lacked merit. That conclusion is reasonable. (Attach. 3, Ex. B at 176-79 (Nelson's testimony on cross-examination)). Counsel is not ineffective for failing to raise a meritless issue. *See Meders v. Warden, Ga. Diagnostic Prison*, 911 F.3d 1335, 1354 (11th Cir. 2019) ("It is not ineffective assistance of counsel to fail to make an objection that is not due to be sustained." ); *Pinkney v. Sec'y, DOC*, 876 F.3d 1290, 1297 (11th Cir. 2017) ("[A]n attorney will not be held to have performed deficiently for failing to perform a futile act, one that would not have gotten his client any relief").

Concerning Pryear's remaining qualms with Trooper Nelson's testimony, the First DCA reasonably decided that Pryear failed to demonstrate he was prejudiced by counsel's failure to object when Nelson stated opinions about Pryear's fault and impairment. When Nelson made those statements during cross-examination, defense counsel immediately countered Nelson's statements by eliciting Nelson's admission that he was not qualified or sufficiently knowledgeable to draw those conclusions. Given the totality of counsel's cross-examination, and the overwhelming evidence from other sources (eyewitnesses testimony, expert testimony and forensic evidence) that Pryear was at fault for the accident and was impaired by alcohol consumption at the time of the accident, there is no reasonable probability that the result of Pryear's trial would have been different had Nelson's statements been stricken.

The state court's rejection of Pryear's claim was not contrary to and did not involve an unreasonable application of the *Strickland* standard; nor was the decision based on an unreasonable determination of the facts. Pryear is not entitled to habeas relief on Ground Two.

### <u>Ground Three</u>   <u>"Trial Counsel Was Ineffective For Failing To Move For Judgment Of Acquittal." (Doc. 1 at 9).</u>

Pryear claims that trial counsel was ineffective for failing to move for a judgment of acquittal because the State failed to present sufficient evidence of impairment, which was an essential element of both offenses. (Doc. 1 at 9). Pryear admits that the State introduced evidence of his blood alcohol level through the testimony and report of a laboratory analyst, but argues that this evidence was improperly admitted and could not be considered. (*Id*.).

The parties agree that Pryear presented this claim to the state courts in his Rule 3.850 proceeding; that the state circuit court summarily denied relief; that Pryear briefed the issue in his postconviction appeal; and that the First DCA affirmed on the merits in a written opinion. (Doc. 1 at 10; Doc. 19 at 31). The State argues that Pryear is not entitled to habeas relief because he fails to meet § 2254(d)'s demanding standard. (Doc. 19 at 31-36).

## A.      State Court's Decision

Pryear presented this claim to the state courts as Ground Three of his Rule 3.850 motion. The state circuit court summarily denied relief. (Attach. 4, Ex. K at 56-57). The First DCA affirmed, explaining:

> In Appellant's third claim, he argued that his attorney should have moved for judgment of acquittal on the basis that the State failed to prove the element of impairment. He alleged that his attorney should have argued the evidence of his blood alcohol level was not properly introduced, as the laboratory analyst who tested the blood sample did not lay a proper predicate for the introduction of the results.
>
> "In moving for a judgment of acquittal, a defendant 'admits not only the facts stated in the evidence adduced, but also admits every conclusion favorable to the adverse party that a jury might fairly and reasonably infer from the evidence.'" *Beasley v. State*, 774 So. 2d 649, 657 (Fla. 2000) (quoting *Lynch v. State*, 293 So.2d 44, 45 (Fla. 1974) ). "A motion for judgment of acquittal should only be granted if there is no view of the evidence from which a jury could make a finding contrary to that of the moving party." *Jeffries v. State*, 797 So. 2d 573, 580 (Fla. 2001). "In resisting a judgment of acquittal, the state can rely on any evidence adduced, even evidence later determined to have been erroneously admitted." *State v. Brockman*, 827 So. 2d 299, 302 (Fla. 1st DCA 2002). A defendant is not entitled to a judgment of acquittal "merely because evidence that is critical to the court's finding of sufficiency was improperly admitted." *Barton v. State*, 704 So. 2d 569, 573 (Fla. 1st DCA 1997).
>
> Here, when the State introduced the lab report reflecting that Appellant's blood alcohol level was .196, defense counsel indicated that he had no objection. Having failed to object to this evidence, he was not entitled to challenge its admission after the fact in a motion for judgment of acquittal. Furthermore, even if this evidence was not properly admitted, it could be relied upon to deny any such motion. Under these circumstances, this claim was properly denied.

*Pryear*, 243 So. 3d at 484 (copy at Attach. 4, Ex. M at 5-6).

Page 24 of 44

## B.      Section 2254 Review of State Court's Decision

The state court's decision was not contrary to clearly established federal law, because the state court utilized the *Strickland* standard, and the facts of Pryear's claim are not materially indistinguishable from any Supreme Court case where the Court has found a *Strickland* violation. Pryear, therefore, must show that the state court's application of the *Strickland* standard was unreasonable.

The First DCA determined—as a matter of state law—that Pryear's proposed motion for a JOA was not viable, because his trial counsel had not objected to the introduction of the lab report and, therefore, could not challenge its admissibility in a motion for JOA. The First DCA further determined, as a matter of state law, that even improperly admitted evidence can be considered on a motion for JOA. This court must defer to the First DCA's resolution of these state law issues. *See Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005) (holding that when the state courts have already answered the question of how an issue would have been resolved under that state's law had defense counsel done what the petitioner argues he should have done, "federal habeas courts should not second-guess them on such matters" because "it is a fundamental principle that state courts are the final arbiters of state law.").

Because the lab report, even if improperly admitted, provided sufficient evidence of impairment to withstand a motion for judgment of acquittal, the First DCA had a reasonable basis to conclude that counsel was not ineffective for failing

to assert the argument Pryear proposes.[6] *See Pinkney*, 876 F.3d at 1297; *Freeman v. Attorney Gen., Fla*., 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim."). Pryear is not entitled to habeas relief on Ground Three.

### Ground Four      "Trial Counsel Was Ineffective For failing To Object To Erroneous Jury Instructions." (Doc. 1 at 11).

Pryear claims that counsel was ineffective for failing to object to the jury instruction on Florida's statutory presumption of impairment, because the evidence of his blood alcohol level was not properly introduced. (Doc. 1 at 11). Pryear claims that he was prejudiced by counsel's failure to object, because "apart from Petitioner's blood alcohol level, the record does not contain evidence of actual impairment." (*Id*.).

The jury instruction at issue read:

> If you find from the evidence that while driving or in actual physical control of a motor vehicle the defendant had a blood or breath alcohol level of .08 or more, that evidence would be sufficient by itself to establish that the defendant was under the influence of alcoholic beverages to the extent that his normal faculties were impaired.

(Attach. 1, Ex. A at 104).

---

[6] The lab report indicated that Pryear's blood alcohol level was .196 grams of alcohol per 100 milliliters of blood at the time of the accident. (Attach. 2, Ex. A at 208 (lab report); Ex. B at 253 (admission of lab report)). Under Florida law, a person is "under the influence" if his blood alcohol level is .08 or more grams of alcohol per 100 milliliters of blood. Fla. Stat. § 316.193(1)(b).

The parties agree that Pryear presented this claim to the state courts in his Rule 3.850 proceeding; that the state circuit court summarily denied relief; that Pryear briefed the issue in his postconviction appeal; and that the First DCA affirmed on the merits in a written opinion. (Doc. 1 at 11-12; Doc. 19 at 37). The State argues that Pryear is not entitled to habeas relief because he fails to meet § 2254(d)'s standard. (Doc. 19 at 37-41).

### A.      State Court's Decision

Pryear presented this claim to the state courts as Ground Four of his Rule 3.850 motion. The state circuit court summarily denied relief. (Attach. 4, Ex. K at 57). The First DCA affirmed, explaining:

> In Appellant's fourth claim, he argued that his attorney was ineffective for failing to object to erroneous jury instructions. He alleged that the trial court should not have instructed the jury on the statutory presumption of impairment. This claim was properly denied for the reasons already discussed in connection with Appellant's third claim.

*Pryear*, 243 So. 3d at 484 (copy at Attach. 4, Ex. M at 6).

### B.      Section 2254 Review of State Court's Decision

The First DCA concluded that trial counsel was not ineffective because Pryear's proposed objection to the jury instruction—that it was improper because the lab report of his blood alcohol level was admitted without proper foundation—was frivolous. The state court's conclusion is reasonable. Prior to trial, the parties stipulated that the blood draw complied with Florida law, and also stipulated to the

chain of custody of Pryear's blood sample. (Attach. 1, Ex. A at 101). At trial, the defense stated "no objection" when Montgomery's lab report was offered into evidence. (Attach. 3, Ex. B at 253-54). On this record—and given that the admissibility of evidence is not a viable basis to challenge a jury instruction—counsel was not ineffective for failing to make a frivolous objection. *See Pinkney*, 876 F.3d at 1297; *Freeman*, 536 F.3d at 1233.

The state court's rejection of Pryear's claim was not contrary to, and did not involve an unreasonable application of, the *Strickland* standard. Pryear is not entitled to habeas on Ground Four.

**Ground Five**   **"Trial Counsel Was Ineffective For Failing To Object To Improper Closing Argument." (Doc. 1 at 12).**

Pryear claims that trial counsel was ineffective when he failed to object to a comment the prosecutor made during closing argument. According to Pryear, the comment "misstated the law and shifted the burden of proof where the prosecutor by asserting [sic] that there is no reasonable doubt because the evidence was not contradicted, thus insinuating that Petitioner had a burden to produce evidence at trial." (Doc. 1 at 12).

The parties agree that Pryear presented this claim to the state courts in his Rule 3.850 proceeding; that the state circuit court summarily denied relief; that Pryear briefed the issue in his postconviction appeal; and that the First DCA affirmed on the merits in a written opinion. (Doc. 1 at 13; Doc. 19 at 42). The State argues that

Pryear is not entitled to habeas relief because he fails to meet § 2254(d)'s demanding standard. (Doc. 19 at 42-48).

### A.     State Court's Decision

Pryear presented this claim to the state courts as Ground Five of his Rule 3.850 motion. The state circuit court summarily denied relief. (Attach. 4, Ex. K at 57-58). The First DCA affirmed as follows:

> In Appellant's fifth claim, he argued that his attorney was ineffective for failing to object to an improper closing argument. He alleged that the prosecutor's argument of no reasonable doubt, because the evidence was not contradicted, suggested that the defense had a burden to produce evidence. Improper burden shifting occurs when the State invites the jury to convict for a reason other than the fact that the State has proven its case beyond a reasonable doubt. *Scott v. State*, 66 So. 3d 923, 930 (Fla. 2011) (citing *Gore v. State*, 719 So. 2d 1197, 1200 (Fla. 1998)). This can occur where the State comments on the defendant's failure to produce evidence that would refute an element of the charge. *Id.* (citing *Jackson v. State*, 575 So. 2d 181, 188 (Fla. 1991)).

> However, even when the State makes an improper argument, the bar for showing prejudice is high. "If 'improper comments by a prosecutor do not constitute reversible error, the defendant "cannot demonstrate the prejudice requisite for a successful ineffective assistance of counsel claim"' relating to counsel's failure to object to the comments." *Taylor v. State*, 120 So. 3d 540, 551 (Fla. 2013) (quoting *Lugo v. State*, 2 So. 3d 1, 17 (Fla. 2008)). To show entitlement to a new trial based upon improper prosecutorial comments, such comments must:

> > either deprive the defendant of a fair and impartial trial, materially contribute to the conviction, be so harmful or fundamentally tainted as to require a new trial, or be so inflammatory that they might have influenced the jury to reach a more severe verdict than that it would have otherwise.

*Walls v. State*, 926 So. 2d 1156, 1157 (Fla. 2006) (quoting *Spencer v. State*, 645 So. 2d 377, 383 (Fla. 1994)).

Here, the prosecutor argued:

So I really must ask you to look at the evidence that's been presented through trial yesterday and today. Apply the law that I've touched upon and you'll be further instructed on, and use your common sense. What that's going to tell you is that the defendant was driving the vehicle, that the defendant had a blood alcohol level of .196 or higher, that he had marijuana in his system at the time he was driving, that he pulled out in front of that truck that caused not only damage to the truck and the Sebring he was driving, but it also caused and contributed to the death of Ms. McCarty. If he doesn't do that, that crash doesn't happen and she doesn't die. He caused or contributed to her death.

*That evidence is—won't be contradicted, and because it won't be contradicted, there is no reasonable doubt as far as his guilt.* He is guilty as charged for DUI, driving under the influence, manslaughter and driving under the influence, damage to property. Thank you.

(Emphasis added.) Given the evidence discussed above, even assuming, arguendo, that counsel should have objected to this argument, Appellant cannot show that this isolated remark meets the standards discussed above for demonstrating prejudice in this context. The evidence introduced at trial established that Appellant was driving while heavily impaired, when he turned in front of the semi-truck without adequate space, violating the truck's right-of-way. Under these circumstances, there is no indication that the prosecutor's remark deprived Appellant of a fair trial, materially contributed to his conviction, fundamentally tainted the proceedings, or inflamed the jury to reach a more severe verdict than it ordinarily would have rendered. Therefore, this claim was properly denied.

*Pryear*, 243 So. 3d at 484-85 (copy at Attach. 4, Ex. M at 6-7).

## B.     Section 2254 Review of State Court's Decision

The state court's decision was not contrary to clearly established federal law, because the state court utilized the *Strickland* standard, and the facts of Pryear's claim are not materially indistinguishable from any Supreme Court case where the Court has found a *Strickland* violation. To warrant habeas relief, Pryear must show that the state court's application of the *Strickland* standard was unreasonable. Pryear fails to make that showing.

A review of the trial record demonstrates that the State presented overwhelming evidence from which the jury could find beyond a reasonable doubt that Pryear committed the crimes of which he was convicted. The First DCA's opinion accurately describes that evidence. In light of this abundant and powerful evidence against Pryear, it was entirely reasonable for the state court to conclude that trial counsel's failure to object to the prosecutor's comment during closing arguments did not undermine confidence in Pryear's conviction. There is no reasonable probability that the outcome of Pryear's trial would have been different had counsel objected to the prosecutor's isolated remark. *See, e.g., Stuckey v. Jones*, 226 F. Supp. 3d 1298 (N.D. Fla. 2016) (even assuming that prosecutor's remark during closing arguments was an improper, burden-shifting comment, trial counsel's purportedly deficient performance in failing to object did not prejudice the defendant because there was no reasonable probability that a successful objection would have

made a difference in the jury's verdict given the overwhelming evidence of the defendant's guilt); *see also, e.g., Smith v. Pulaski SP Warden*, 809 F. App'x 712, 718 (11th Cir. 2020) (holding that counsel's failure to object to the prosecutor's improper conduct at the end of rebuttal closing argument did not prejudice the defendant considering that the jury was instructed that closing arguments are not evidence, and given the "overwhelming" and "powerful" evidence that the defendant committed the crimes for which she was convicted).

Furthermore, on federal habeas review, "[t]he relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden*, 477 U.S. at 181 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)). The comments must have been improper and have rendered the trial fundamentally unfair. *United States v. Eyster*, 948 F.2d 1196, 1206 (11th Cir. 1991). This Court's review of the record does not indicate that the prosecutor's comment, even if questionable, rose to such a level as to result in an unfair trial or deprivation of due process. *See Darden*, 477 U.S. at 181; *Eyster*, 948 F.2d at 1206; *see also Tucker v. Kemp*, 802 F.2d 1293, 1296 (11th Cir. 1986) ("If a reviewing court is confident that, absent the improper remarks, the jury's decision would have been no different, the proceeding cannot be said to have been fundamentally unfair."); *Muhammad v. McNeil*, 352 F. App'x 371, 377 (11th Cir. 2009) ("Assuming arguendo Muhammad's attorney was constitutionally ineffective

for failing to object, the statements themselves did not render the trial fundamentally

unfair. Muhammad has not shown that, had his attorney objected contemporaneously

to the improper comment regarding a fact not in evidence, the outcome would have

been any different.").

The First DCA's application of *Strickland* was reasonable, as Pryear failed to

meet his high burden to show that he was prejudiced by counsel's failure to object

to the prosecutor's remark. Pryear is not entitled to habeas relief on Ground Five.

**<u>Ground Six</u>          <u>"Trial Counsel Was Ineffective For Failing To Call
          Available Witness For Trial." (Doc. 1 at 14).</u>**

 Pryear claims that trial counsel was ineffective for failing to call Amada Price

as a defense witness. Pryear alleges that Price would have testified that the driver of

the semi-truck (Stanford Britts) was speeding and driving erratically when the

accident occurred. (Doc. 1 at 14).

The parties agree that Pryear presented this claim to the state courts in his Rule

3.850 proceeding; that the state circuit court summarily denied relief; that Pryear

briefed the issue in his postconviction appeal; and that the First DCA affirmed on

the merits in a written opinion. (Doc. 1 at 14-15; Doc. 19 at 50). The State argues

that Pryear is not entitled to habeas relief because he fails to meet § 2254(d)'s

standard. (Doc. 19 at 50-55).

### A.    State Court's Decision

Pryear presented this claim to the state courts as Ground Six of his Rule 3.850

motion. The state circuit court summarily denied relief. (Attach. 4, Ex. K at 58-60).

The First DCA affirmed as follows:

> In Appellant's sixth claim, he argued that his attorney was ineffective for failing to call defense witness Amanda Price to testify. Appellant alleged that Ms. Price would have testified that the driver of the semi-truck was speeding and driving erratically at the time of the accident, thus contradicting the truck driver's testimony that he was not speeding, as well as the testimony of the highway patrol trooper and the traffic homicide investigator that Appellant was at fault in the accident.

> Even if Ms. Price's testimony could have established that the driver of the semi-truck shared in the blame for the accident, there is no reasonable probability that it would have changed the outcome of the trial. First, her testimony would have been contradicted by that of the traffic homicide investigator, who testified that he estimated the speed of the semi-truck to be between 36 and 39 miles per hour at the time of the accident, and the speed limit was 40 miles per hour. Second, as discussed above, Ms. Watson testified that the semi-truck was moving fast, the speed limit was 40 or 45 miles per hour, and the truck appeared to be "doing every bit of that coming through the intersection." Thus, even Ms. Watson, who was concerned by the speed of the semi-truck at the time of the accident, estimated that it was going the speed limit.

> Furthermore, DUI manslaughter requires proof that a defendant operated a vehicle while impaired within the meaning of section 316.193(1), Florida Statutes (2013), and, "by reason of such operation, cause[d] *or contribute[d]* to causing . . . [t]he death of any human being. . . ." § 316.193(3)(c)3.a., Fla. Stat. (2013) (emphasis added). "[T]he fact that someone is intoxicated and drives a particular vehicle which causes another person's death should be enough to satisfy the elements of DUI manslaughter." *State v. Hubbard*, 751 So. 2d 552, 563 (Fla. 1999). "The causation element of the amended statute was interpreted by [the Florida Supreme Court] in [*Magaw v. State*, 537 So. 2d 564, 567 (Fla. 1989),] as *not requiring* that the conduct of the operator of the vehicle

be the sole cause." *Hubbard*, 751 So. 2d at 564 (emphasis in original).FN3 "The statute requires only that the operation of the vehicle should have caused the accident. Therefore, any deviation or lack of care on the part of a driver under the influence to which the fatal accident can be attributed will suffice." *Magaw*, 537 So.2d at 567.

> FN3  The version of the statute being interpreted in those cases required that operating a vehicle while intoxicated "cause" a death, see *Hubbard*, 751 So. 2d at 562; *Magaw*, 537 So. 2d at 566, whereas the current version requires operating the vehicle to "cause or contribute to" the victim's death. *See* § 316.193(3)(c)3., Fla. Stat. (2013). The current version contains broader language.

> Here, even if the driver of the semi-truck was speeding, it would not undermine the evidence that Appellant's actions caused or contributed to the accident. As discussed above, an eye witness testified that she was concerned when she saw Appellant's car start to turn in front of the truck, because he did not have enough time to make the turn. The traffic homicide investigator opined that Appellant was at fault, because he violated the semi-truck's right-of-way when he made the left turn, as they were both moving on a green signal and Appellant should have yielded. There was ample evidence establishing Appellant's intoxication at the time of the accident, including the results of the blood alcohol test, testimony regarding the odor of alcohol on his breath, bloodshot and watery eyes, and slurred speech. Thus, the evidence established that while Appellant was impaired, he turned in front of the truck without adequate time to safely complete the turn, thus violating the semi-truck's right-of-way. Under these circumstances, this claim was properly denied.

*Pryear*, 243 So. 3d at 485-86 (copy at Attach. 4, Ex. M at 8-9).

## B.   Section 2254 Review of State Court's Decision

This court defers to the state court's findings of fact, because they are amply

supported by the record and because Pryear has not rebutted them with clear and

convincing evidence to the contrary. *See Consalvo*, 664 F.3d at 845. This court also defers to the state court's interpretation of state law. *Callahan*, 427 F.3d at 932.

Given the evidence at trial and the elements of Florida's DUI statute, there is no substantial likelihood that Price's lay opinion that the truck driver was speeding would have changed the jury's determination that Pryear operated his vehicle while impaired and, by reason of such operation, caused or contributed to the accident that took Ms. McCarty's life. Thus, the state court reasonably concluded that even assuming Price would have testified as Pryear alleges, her testimony would not have changed the jury's verdict.

The state court's rejection of Pryear's claim was not contrary to and did not involve an unreasonable application of the *Strickland* standard. Nor was the decision based on an unreasonable determination of the facts. Pryear is not entitled to habeas relief on Ground Six.

### **Ground Seven      "Cumulative Trial Counsel Error." (Doc. 1 at 15).**

Pryear's final ineffective assistance claim seeks relief "on the basis [that] cumulative errors performed by trial counsel deprived Petitioner of effective assistant [sic] and a fair trial." (Doc. 1 at 16). The parties agree that Pryear presented this claim to the state courts in his Rule 3.850 proceeding; that the state circuit court summarily denied relief; that Pryear briefed the issue in his postconviction appeal; and that the First DCA affirmed on the merits in a written opinion. (Doc. 1 at 16;

Doc. 19 at 55). The State argues that Pryear is not entitled to habeas relief because

he fails to meet § 2254(d)'s standard. (Doc. 19 at 55-60).

### A.    State Court's Decision

Pryear presented this claim to the state courts as Ground Seven of his Rule

3.850 motion. The state circuit court summarily denied relief. (Attach. 4, Ex. K at

60). The First DCA affirmed as follows:

> In Appellant's seventh claim, he argued that the cumulative
> effect of his attorney's errors deprived him of a fair trial. This claim
> was properly denied. For the reasons discussed above, Appellant's
> individual claims are meritless; therefore, "[b]ecause all of the
> allegations of individual legal error are without merit, a cumulative
> error argument based upon these errors must also fail." *See Barnhill v.
> State*, 971 So. 2d 106, 118 (Fla. 2007).

*Pryear*, 243 So. 3d at 486 (copy at Attach. 4, Ex. M at 9).

### B.    Section 2254 Review of State Court's Decision

The Eleventh Circuit has recognized that, based on the current state of

Supreme Court precedent, a cumulative-error claim may not be cognizable on

federal habeas review. *See Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 &

n.3 (11th Cir. 2012) ("We need not determine today whether, under the current state

of Supreme Court precedent, cumulative error claims reviewed through the lens of

AEDPA can ever succeed in showing that the state court's decision on the merits

was contrary to or an unreasonable application of clearly established law."). While

the Supreme Court has not addressed the applicability of the cumulative-error

doctrine in the context of ineffective-assistance-of-counsel claims, the Court has held that "there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt." *United States v. Cronic*, 466 U.S. 648, 659 n.26 (1984) (citations omitted).

Pryear has not shown that any error of counsel undermines the reliability of the jury's finding of guilt. In light of *Cronic* and the absence of Supreme Court precedent applying the cumulative error doctrine to claims of ineffective assistance of counsel, the First DCA's rejection of Pryear's cumulative-error claim is not contrary to, or an unreasonable application of, clearly established federal law. Pryear is not entitled to habeas relief on Ground Seven.

**Ground Eight**      **"Erroneous Jury Instruction Was Fundamental Error On Presumption Of Impairment." (Doc. 1 at 17).**

Pryear's final claim is that the trial court committed fundamental error because the jury instructions "prevented the jury from being able to choose a [sic] based on the jury's application of its fair assessment of the facts concerning Petitioner's impairment at the time of the accident; on the evidence adduced below in the present case, it is entirely possible that a verdict of guilty could not have been obtained without the assistance of the error alleged." (Doc. 1 at 17).

The parties agree that Pryear presented this claim to the state courts in his Rule 3.850 proceeding; that the state circuit court denied relief; that Pryear briefed the

issue in his postconviction appeal; and that the First DCA affirmed in a written opinion. (Doc. 1 at 17-18; Doc. 19 at 61). The State asserts that Pryear's claim is procedurally defaulted because the First DCA rejected it on the independent and adequate state ground of procedural bar. (Doc. 19 at 61-64). The State is correct.

### A.    Exhaustion and Procedural Default

"A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts." *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)). Federal courts consider a claim procedurally defaulted if it was presented in state court and rejected on an independent and adequate state ground of procedural bar or default. *See Coleman v. Thompson*, 501 U.S. 722, 734-35, n.1 (1991); *Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts.").

This Circuit has a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision. *Judd*, 250 F.3d at 1313. First, the last state court rendering judgment must clearly and expressly state it is relying on a state procedural rule to resolve the federal claim. *Id*. Second, the state court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law. *Id.*

Third, the state procedural rule must be adequate. *Id.* The adequacy requirement has been interpreted to mean the rule must be "firmly established and regularly followed," *Siebert v. Allen*, 455 F.3d 1269, 1271 (11th Cir. 2006), that is, not applied in an "arbitrary or unprecedented fashion," *Judd*, 250 F.3d at 1313, or in a manifestly unfair manner. *Ford v. Georgia*, 498 U.S. 411, 424-25 (1991); *Upshaw v. Singletary*, 70 F.3d 576, 579 (11th Cir. 1995).

A petitioner seeking to overcome a procedural default must show cause and prejudice, or a fundamental miscarriage of justice. *Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993). "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." *McCleskey v. Zant*, 499 U.S. 467, 497 (1991) (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). The miscarriage of justice exception requires the petitioner to show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). This standard is extremely difficult to meet:

> [A] substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.

513 U.S. at 327. "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." *Id.*

### B.   Pryear's Claim is Procedurally Defaulted

Pryear presented this claim to the state courts as Ground Eight of his Rule 3.850 motion. The state circuit court summarily denied relief on the merits. (Attach. 4, Ex. K at 60). The First DCA affirmed, but on a different basis—the court imposed a state procedural bar:

> In Appellant's eighth claim, he argued that the trial court committed fundamental error in instructing the jury on the statutory presumption of impairment, because the blood alcohol evidence was not properly introduced. This claim is not cognizable pursuant to rule 3.850, because it should have been raised on direct appeal. *See* Fla. R. Crim. P. 3.850(c) ("This rule does not authorize relief based upon grounds that could have or should have been raised at trial and, if properly preserved, on direct appeal of the judgment and sentence."); *Johnson v. State*, 985 So. 2d 1215, 1215 (Fla. 1st DCA 2008) ("[P]rosecutorial misconduct, insufficiency of the evidence ..., and trial court error[ ] are not cognizable in a collateral postconviction motion."). Furthermore, as discussed in connection with Appellant's third claim, defense counsel did not object to the introduction of the lab report, therefore, the trial court had no basis to disregard the evidence of impairment.

*Pryear*, 243 So. 3d at 486-87 (copy at Attach. 4, Ex. M at 9-10).

The First DCA's rejection of Pryear's claim as procedurally barred under Fla. R. Crim. P. 3.850(c), is an independent and adequate state ground precluding federal habeas review of Pryear's substantive challenge to the jury instructions. *See LeCroy v. Sec'y, Fla. Dep't of Corr.*, 421 F.3d 1237, 1260, n.25 (11th Cir. 2005) ("[T]he

procedural requirements of Florida's Rule 3.850 constitute independent and adequate state grounds under the applicable law."); *Dufour v. State*, 905 So. 2d 42, 69 (Fla. 2005) (holding that defendant's postconviction claims challenging the jury instructions were procedurally barred because the claims could have and should have been objected to at trial and raised on direct appeal).

Pryear makes none of the requisite showings to excuse his procedural default. Pryear's procedural default bar federal habeas review of Ground Eight.

## IV. Certificate of Appealability is Not Warranted

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. *See* 28 U.S.C. § 2254 Rule 11(b).

"[Section] 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El*, 537 U.S. at 336 (quoting 28 U.S.C. § 2253(c)). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude

the issues presented are adequate to deserve encouragement to proceed further.'"
*Buck v. Davis*, 580 U.S. ___, 137 S. Ct. 759, 774 (2017) (quoting *Miller-El*, 537 U.S.
at 327). "When the district court denies a habeas petition on procedural grounds
without reaching the prisoner's underlying constitutional claim, a COA should issue
when the prisoner shows, at least, that jurists of reason would find it debatable
whether the petition states a valid claim of the denial of a constitutional right *and*
that jurists of reason would find it debatable whether the district court was correct in
its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (emphasis
added). Here, Petitioner has not made the requisite demonstration. Accordingly, the
court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order,
the court may direct the parties to submit arguments on whether a certificate should
issue." 28 U.S.C. § 2254 Rule 11(a).  If there is an objection to this recommendation
by either party, that party may bring such argument to the attention of the district
judge in the objections permitted to this report and recommendation.

## V.    Conclusion

For the reasons set forth above, the undersigned respectfully
**RECOMMENDS** that:

1.  The petition for writ of habeas corpus (Doc. 1), challenging the judgment of conviction and sentence in *State of Florida v. Melvin Lewis Pryear*, Escambia County Circuit Court Case No. 2013-CF-5789, be **DENIED**.

2.  The District Court **DENY** a certificate of appealability.

3.  The clerk of the court close this case file.

At Panama City, Florida, this <u>9th</u> day of August, 2020.

<u>/s/ *Michael J. Frank*</u>
**Michael J. Frank**
**United States Magistrate Judge**

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**